## Louisville & Nashville Railroad Company v. O'Flynn.

(Decided March 2, 1926.)

### Appeal from Daviess Circuit Court.

1.   Appeal and Error—That Petition in Action Against Railroad for Water Damage to Plaintiff's Land Partook of Nature Both of Action in Contract and in Tort Held Not Prejudicial, where Parties were Not Misled.—That petition in action against railroad for damages to plaintiff's land and growing crops by flooding partook of nature both of action in contract and in tort held not prejudicial, where issue joined was clearly and definitely made, and parties were not misled as to questions involved.

2.   Waters and Water Courses—Evidence Showing Loss of Crops and Their Value as Element of Temporary Damage for Flooding Lands Held Admissible.—In action against railroad for temporary damages to plaintiff's lands and growing crops by flooding, evidence showing loss of crops and their value held admissible.

3.   Waters and Water Courses—Instructions Limiting Damages from Flooding to Injuries to Crops Held Proper, where Averments Concerning Permanent Damage to Lands were Stricken.—Instructions limiting landowner's recovery for damage from flooding to injuries to his crops held proper, where all averments concerning perma-

nent damages to lands from flooding and defendant's failure to construct ditches in accordance with contract were stricken.

4. Waters and Water Courses—Railroad's Liability for Flooding Lands Held for Jury.—In action against railroad for damages to plaintiff's lands and growing crops from flooding, peremptory instruction for defendant held properly refused.

5. Trial.—Instructions presenting theories which are not properly before court are properly refused.

SANDIDGE & SANDIDGE and WOODWARD, WARFIELD & HOBSON for appellant.

LOUIS I. IGLEHEART and L. P. TANNER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellee, O'Flynn, sued appellant, railroad company, for damages resulting to his lands and growing crops from water cast thereon by drainless embankments of the railroad, and recovered a verdict.

The petition as first drafted sounded in both contract and tort, and appellant company moved for an election, and this motion was sustained along with one to strike certain averments of the petition sounding in tort. Some years ago a similar contention arose between appellant and appellee and others, and to settle the matter all parties entered into a written contract reading:

"Received of the Louisville and Nashville Railroad Company the sum of two hundred dollars ($200.00) which, with said company's agreement herein contained, is accepted in full settlement, satisfaction and compromise of all claims in my favor asserted by me in a suit now pending in the Daviess circuit court, wherein I am plaintiff and said company is defendant, being common law action No. ......, on account of alleged injury to my land and crops by the alleged negligent construction and maintenance of said company's roadbed and ditches at a point in Daviess county lying between Utica station and the county ditch north of said station, and of all claims and demands of every character whatsoever which I may have had, have or may hereafter have against said company, its officers, agents or employes, on account of any water overflowing or standing upon any part of my land described in the petition in said action, which is situated in Daviess county, Kentucky, between Utica and Brown Valley,

and adjoining the lands of Sue Talbott, J. M. Clark and Joe Birkhead, by reason of said company's constructing or maintaining any ditches, or changing the natural course of Big Run creek at said point, or by reason of the damming up, obstructing, impeding or confining of any water by said company's railroad bed or embankment, or because of the filling up or damming of any ditches, or because of any or all the conditions heretofore or now existing at or near my said land, and on every other account whatsoever.

"The said company hereby agrees, as part of the consideration of this settlement, to construct and maintain ditches on both sides of its track at said point as follows: The ditch on the west side of said track is to begin at the county ditch and to be twelve (12) feet wide at top, four (4) feet deep and six (6) feet wide at bottom, the depth from level of land, south to corner of Joe Birkhead's land; thence south with his land eleven (11) feet wide at top, four (4) feet deep and five (5) feet wide at bottom, half of dirt to be put on Birkhead's side; thence south ten (10) feet wide at top, four (4) feet deep and four (4) feet wide at bottom to railroad culvert in Utica, half of dirt to be thrown on each side and each bank of ditch to have a gradual slope from top to bottom. The ditch on the east side of said track at said point is to begin at culvert near county ditch eight (8) feet wide at top, three and a half (3½) feet and four (4) feet wide at bottom to Joe Birkhead's land; thence south seven (7) feet wide at top, three and a half (3½) feet deep and three and a half (3½) feet wide at bottom to E. O'Flynn's corner; thence south six (6) feet wide at top, three and a half (3½) feet deep and three (3) feet wide at bottom to E. O'Flynn's southern corner. It is understood that these ditches are to be seventeen (17) feet from the outside of the rail, and that the water from the east side ditch is to be carried through the culvert referred to above under railroad track to the west side ditch.

"In consideration of the construction and maintenance of said ditches, and the said sum paid to me, I further agree and bind myself, my vendees, heirs and assigns, that I, and they, will not make any claim or claims, or bring any suit or action at law, against said company, its successors or assigns, on

account of any damage that may have been or may be done to said land, on any part thereof, by water overflowing or standing thereon or damaging said land in any way, whether occasioned by the failure of said company to have a culvert, pipe, waterway, or other drainage whatsoever through or under said railroad embankment or roadbed or right of way, or on account of said railroad embankment now or as it may be hereafter constructed as a roadbed, or for any other reason.

"It is further understood and agreed by and between the parties hereto that the obligation on any part to hold said company harmless against any claims, demands or litigation on account of any damage to said land, as aforesaid, shall be a covenant running with the land and binding upon me, my heirs and assigns forever. The said action is to be dismissed settled at the cost of the defendant."

The petition in substance alleged O'Flynn to be the owner of about twenty acres of fine bottom land near the railroad embankment on which land water was caused to flow by reason of the railroad embankment, and because the railroad company failed to construct and maintain the ditches along its right of way which it contracted to build and maintain and that by reason thereof the water destroyed a crop of corn and grass belonging to appellee in the year 1917, and another crop of corn and a crop of grass in 1920, and a third one in 1921, to the damage of appellee in named sums aggregating in all $1,000.00. The plaintiff also filed an amended petition averring the failure of the railroad company to build the ditches in accordance with the contract. The answer of the company traversed the averments in the petition of loss and damage to the plaintiff for each of the years. By a second paragraph it was affirmatively pleaded that the ditches were constructed in accordance with the terms of the contract, and further that the appellee, O'Flynn, participated and assisted in the construction of the ditches and accepted them when completed as a full compliance with the terms of the contract, and is now estopped to assert that the ditches did not comply with the terms of the contract. The third paragraph of the answer pleaded contributory negligence.

Appellant, O'Flynn, offered and was permitted to prove by himself and several witnesses that his land was

overflowed by water backing up from the railroad embankment; that the culverts were not large enough to allow the water to pass; that the ditches called for in the contract were not properly constructed, at least in part, and that they had not been properly maintained, but on the contrary had been allowed to cave in and to fill up and thus cause the water to flow upon and stand upon appellee's lands; that in the year 1917 he lost growing crops of corn and a growing crop of grass to his damage in the sum of about $300.00, and for the years 1920 and 1921 he lost growing crops upon his land by floods caused in the same manner, to his damage in named sums.

The railroad company combated this evidence and undertook to prove that the ditches were constructed in all respects as required by the contract and that water which stood upon the lands of appellee, O'Flynn, were there from natural causes and not by reason of the embankment of the railroad company nor for lack of ditches along its right of way as specified in the contract, upon which appellee, O'Flynn, relied.

Appellant company insists that the judgment is erroneous and should be reversed because the trial court overruled its motion to strike from the petition appellee's claim for damages to his crop. This contention is based upon the theory that this is an action for breach of contract and not one in tort, appellant insisting that in such an action for the breach of a construction contract for the betterment and improvement of property the measure of damages is the difference between the value of the property with and without the improvements called for in the contract. It further insists that no damages except those to crops were proven by the evidence and that appellee could not recover for loss of crops in an action upon the contract but merely recover damages for a breach of the contract, and further that the court erred in its instructions to the jury and further erred in refusing to give to the jury the instruction offered by appellant.

While the petition partakes somewhat of the nature of an action in contract and also of an action in tort, we think the issue joined was clearly and definitely made and that the parties were not misled to their prejudice as to the questions involved. All questions were definitely and clearly before the court, and were presented to the jury by instructions which directed the jury that

if it believed from the evidence that the railroad company failed to construct and maintain the ditches described in the written contract, in accordance with the dimensions specified and set out therein, and further believe from the evidence as a direct result of such failure on the part of the railroad company to so construct and maintain the ditches in accordance with the terms of the contract, if it did so fail, water from the ditches overflowed the lands of the plaintiff in 1917, 1920 and 1921, injuring the crops of plaintiff, to find for him, otherwise to find for the defendant company.

The next instruction was one on the measure of damage. The third instruction given by the court was offered by appellant company, and reads:

"The court instructs the jury that if they should believe that the plaintiff is entitled to recover as outlined in these instructions then in ascertaining his damages they can only allow damages for the injury to his growing crops to the extent of their value at the time and place of their destruction."

Only temporary damages were sought by appellee, and such must arise in cases like this from the destruction of growing crops. It necessarily follows that appellee, O'Flynn, was entitled to show the loss of crops and their value as an element of damage. Such evidence was not, therefore, prejudicial to appellant company.

Appellee, O'Flynn, struck from his petition all averments concerning permanent damage to the lands by reason of the overflow of water and by reason of the failure of the railroad company to construct and maintain the ditches in accordance with the terms of the contract. The measure of damage could not, under such circumstances, have been the difference in value of the lands with and without the ditches constructed in accordance with the contract, because that would have taken into consideration the permanent damages occurring to the lands. The instructions, therefore, appear to have presented the exact question at issue to the jury for its determination.

Appellant offered a number of instructions, including one directing the jury to find and return a verdict for it, but clearly this instruction should not have been given. The other instructions presented theories which were not properly before the court, and the court did not err in rejecting them.

Upon the whole we find no error prejudicial to the substantial rights of appellant railroad company, and the judgment is affirmed.

Judgment affirmed.